THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MALCOLM TURNER, Defendant-Appellant.

First District (5th Division)   No. 83—1977

Opinion filed September 21, 1984.

Jerome Rotenberg, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and John C. Legutki, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Malcolm Turner, was charged with attempted robbery (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a)), robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—1), and felony murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)). The jury found him guilty of all three charges. The court held that the charges merged and imposed a sentence of 22 years for murder. Defendant appeals.

The following issues are presented: (1) whether the trial court erred in denying the defendant's pretrial motion to dismiss the indictment; (2) whether the trial court erred in denying defendant's motion for a directed verdict at the close of the State's case; (3) whether the evidence failed to establish the cause of death beyond a reasonable doubt; (4) whether the introduction of testimony of an assistant State's Attorney recommending that charges be brought against the defendant was error; and (5) whether statements made by the prosecutor during closing argument were prejudicially improper. We reverse and remand.

At the trial, eyewitnesses Rose Casares and John Haepp testified that on April 17, 1981, at about 1:30 p.m., they were traveling in their van near 47th and Halsted streets. They observed defendant and another man, Michael Avery, on the sidewalk at that location holding an older man, George Deberaux, between them, beating him about the face and chest. Upon seeing this, they stopped their van and Haepp immediately jumped out with Casares following close behind. Haepp began yelling at the two men to leave Deberaux alone. By this time, Deberaux had either jumped or been pushed to the street level, which was 5½ to 6 feet below the sidewalk. Soon after, the two men fled the scene. Neither Casares nor Haepp saw the two men take anything from the older man. Although he chased the two men as they fled, Haepp was unable to catch them. Haepp and Casares testified that after either being pushed or having jumped to the street level, Deberaux took a few steps and then fell. Officer Castenada, the first police officer on the scene, stated that Deberaux was bruised, bleeding, and unconscious. Deberaux died later that day.

Just prior to this incident, defendant and Avery stopped along 47th Street near Halsted to talk with William Rake, an acquaintance of the defendant's. Rake testified that Avery said, "I know that old man over there has money." Defendant replied, "Mike, you are going to get a nigger put in jail." After they crossed the street and approached Deberaux, Rake saw both men pushing and punching him.

Later that same afternoon, police questioned the defendant about

the incident. Officer Anderson testified that the defendant told him that he robbed Deberaux but did not beat him. At trial defendant denied that he told the officer that he robbed Deberaux. He instead testified that he told Detective Bedran that he had followed Avery with the intention of stopping him from robbing Deberaux. Defendant testified that Avery asked Deberaux for a quarter, which was given to him. When Avery asked for a quarter for the defendant, defendant stated that he did not want any money. At this point, Avery began pushing and shoving Deberaux. Defendant maintained that he stepped in between the two to break them apart. During the scuffle, defendant stated that Avery took some bills from Deberaux' pocket. After Deberaux fell to the street level below, defendant stated that he ran after Avery to persuade him to return to the scene and give the money back.

An assistant State's Attorney, Michael Ditore, was called as a witness by the State. He testified that in April of 1981 he was assigned to the felony review unit. Detective Bedran telephoned Ditore on the day in question concerning the Deberaux incident. Ditore testified that he had conversations with the police, witnesses, and the defendant that day. Defendant related the facts of the incident to Ditore, including his explanation that he accompanied Avery in an attempt to prevent him from robbing Deberaux. Ditore testified that he did not recommend that charges be brought that day, but when the results of an autopsy performed on Deberaux were released the following day, he then recommended placing charges.

Dr. Robert Stein, chief medical examiner of Cook County, testified that his external examination of the victim's body revealed abrasions and contusions in the left eye area. Abrasions and contusions were also found around the right forearm. These injuries, Dr. Stein indicated, could have been caused by a blunt object. During the internal examination he also discovered that Deberaux suffered from heart disease. Dr. Stein stated that in his opinion the victim died as a result of blunt trauma in association with arteriosclerotic heart disease. If the victim had not received this type of trauma, he would have lived.

The jury found defendant guilty on charges of attempted robbery, robbery, and felony murder. The court imposed a sentence of 22 years' imprisonment. Defendant appeals.

OPINION

■ The first issue raised is whether the trial court erred in denying the defendant's pretrial motion to dismiss the indictment. Defendant maintains that the indictment was based partly on the perjured

testimony of Officer Bedran that defendant had admitted his participation in the crimes charged. The appellant has the burden of presenting a sufficiently complete record of the earlier proceedings to support a claim of error, and any doubts occasioned by the incompleteness of the record are resolved against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958.) Because the record contains no transcript of the proceedings involved, we cannot say the trial court erred in denying the motion.

■ We next consider the second issue defendant raises regarding whether the trial court erred in denying his motion for a directed verdict at the close of the State's case. The State urges that the defendant waived any error in the trial court's ruling by presenting evidence after the motion was overruled. An election by the defendant to present evidence after a motion for directed verdict has been overruled waives any error in the trial court's ruling on the motion (*People v. Curtis* (1967), 90 Ill. App. 2d 231, 232, 232 N.E.2d 457), except when the defendant renews the motion at the close of all the evidence. (*LeMay v. Jenkins* (1955), 6 Ill. App. 2d 57, 59, 126 N.E.2d 524.) Here, the defendant moved for a directed verdict at the close of all the evidence properly preserving this issue for review.

■ ■ The defendant argues that the motion should have been granted because the State's evidence, except for the oral admissions of the defendant, failed to establish that a robbery occurred. Without these oral statements, the defendant contends there was insufficient evidence to establish the *corpus delicti* that a robbery had occurred. We find defendant's argument unpersuasive. A conviction based on a confession will be upheld if independent evidence (1) shows that a crime did occur, although the evidence need not establish that fact beyond a reasonable doubt, and (2) corroborates or bolsters the circumstances of the confession. (*People v. Willingham* (1982), 89 Ill. 2d 352, 360-61, 432 N.E.2d 861.) If this test is satisfied, both the independent evidence and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved. (89 Ill. 2d 352, 360, 432 N.E.2d 861.) In the instant case there was independent evidence that before Deberaux died defendant was beating him about the face after Avery had asked him for money. This evidence tends to prove that a crime occurred and was consistent with defendant's statement that he had robbed Deberaux, although it did not by itself establish the *corpus delicti*. (See also *People v. Barkenlau* (1982), 105 Ill. App. 3d 785, 434 N.E.2d 856.) We find that the *corpus delicti* was established. Thus, defendant's argument provides no basis for granting a directed verdict.

790

■ When a motion for a directed verdict is made at the close of all the evidence, the proper standard on review is whether a verdict of not guilty should be granted where all the evidence, viewed in a light most favorable to the State, fails to establish defendant's guilt beyond a reasonable doubt. (*People v. Easter* (1981), 102 Ill. App. 3d 974, 981, 430 N.E.2d 612.) Our review of the evidence presented on each charge reveals that, construing the evidence most favorably to the State, the State established defendant's guilt beyond a reasonable doubt.

■■ A person commits an attempted robbery when, with intent to commit the specific offense of robbery, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a).) Intent may be inferred from the acts of the accused and the surrounding circumstances. (*People v. Cheatem* (1976), 35 Ill. App. 3d 414, 416, 342 N.E.2d 410.) Construing the evidence most strongly in favor of the State shows that William Rake spoke with the defendant and Avery immediately preceding this incident. Avery saw the victim and stated that he knew the older man had money. Moments later defendant and Avery crossed the street and approached the victim. In addition to Rake, eyewitnesses Casares and Haepp indicated that they saw defendant and Avery beating the victim. After this beating, the victim was either pushed or jumped to the street level below, where he fell to the pavement unconscious after taking a few steps. Defendant and Avery then fled from the scene. When Officer Anderson went to defendant's home after the incident, defendant admitted that he had robbed the victim, but did not beat him. We find these facts sufficient to infer the necessary intent. Defendant's participation in the physical abuse of the victim constituted a substantial step toward the commission of a robbery.

■ A robbery occurs when a person takes property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1981, ch. 38, par. 18—1.) Defendant admitted that he robbed the victim shortly after the incident. Although defendant's testimony conflicted with his initial confession to the robbery, eyewitnesses observed him and Avery on either side of Deberaux beating him. Based on these eyewitness accounts, the element of the use of force was established.

■■ A person who kills another individual without lawful justification commits murder if the conduct which causes the death of the individual occurs during an attempt to commit or the commission of a forcible felony other than voluntary manslaughter. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3).) When the defendant is charged with

murder, the State must prove both the fact of death and the criminal agency causing death. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 499, 445 N.E.2d 795.) Eyewitness accounts attributed the beating of the victim to the defendant and Avery. Dr. Stein testified that Deberaux died as a result of blunt trauma in association with arteriosclerotic heart disease. He further stated that the victim's death could not have been caused by either condition alone. We conclude that all of the evidence viewed most favorably to the State establishes defendant's guilt beyond a reasonable doubt. Thus, the trial court did not err in denying defendant's motion for a directed verdict.

The third issue defendant raises is whether the evidence failed to establish the cause of death beyond a reasonable doubt. The State shoulders the burden of proving all the material and essential facts constituting the crime. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432.) When the defendant is charged with murder, the State must prove both the fact of death and the criminal agency causing death. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 499, 445 N.E.2d 795.) The State is not required to prove that defendant's acts constituted the sole and immediate cause of death. (112 Ill. App. 3d 486, 499, 445 N.E.2d 795.) If the State establishes that those acts were a contributory cause and the death did not result from a source independent of those acts, that is sufficient. *People v. Schreiber* (1982), 104 Ill. App. 3d 618, 625, 432 N.E.2d 1316, *cert. denied* (1983), 459 U.S. 1214, 75 L. Ed. 2d 452, 103 S. Ct. 1214.

In this case, the State met its burden. Dr. Stein, the medical examiner, testified that Deberaux died as a result of blunt trauma, that is, injury produced by a blunt object rather than a sharp one, in association with arteriosclerotic heart disease. He also stated that either the heart disease or the blunt trauma alone could not have caused the death. We think this evidence is sufficient to establish criminal agency. The jury implicitly found that the beating caused Deberaux' death, and we cannot say this finding was unsupported by the evidence. Thus, the State proved beyond a reasonable doubt that the victim's death was the result of defendant's criminal acts.

Defendant cites *People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80, in support of his argument that the evidence is insufficient to establish criminal responsibility for the victim's death. *Benson* is distinguishable from the instant case, because in *Benson* there was no evidence explaining how the defendant's acts could have caused the victim's physical conditions. Nor was there evidence that any of these conditions resulted from trauma. In this case, there was evidence presented on both of these points.

■■■ The fourth issue raised is whether the introduction of the testimony of an assistant State's Attorney recommending that charges be brought against the defendant was error. The State argues that Michael Ditore's testimony simply outlined the steps taken leading to the recommendation of charges. We find no merit in this contention. A prosecutor's testimony that he recommended that charges be placed against a defendant after discussing the facts of the case with the police was held prejudicial error requiring a new trial in *People v. Blissit* (1973), 12 Ill. App. 3d 551, 299 N.E.2d 562. The prejudicial impact of Ditore's testimony is greater in the instant case because he testified not only that he spoke with police prior to recommending charges but also with several witnesses and the defendant. Over defendant's objection, Ditore stated that he waited to recommend charges until the medical examiner released the results of an autopsy performed on the victim. The prejudicial effect of this testimony requires that the case be remanded for a new trial.

■■■ Defendant's fifth and last contention is that statements made by the prosecutor during closing argument were prejudicially improper. Closing arguments which reflect unfavorably on the accused are not improper if based upon competent evidence. (*People v. Gillarm* (1976), 41 Ill. App. 3d 174, 176-77, 353 N.E.2d 280.) If improper, a prosecutor's remarks are not reversible error unless they result in substantial prejudice to the defendant. (*People v. De Savieu* (1973), 11 Ill. App. 3d 529, 535, 297 N.E.2d 336; *People v. Phillips* (1970), 126 Ill. App. 2d 179, 184, 261 N.E.2d 469.) While we do not condone ill-advised closing arguments, we find only one of the objected-to remarks sufficiently prejudicial to have denied the defendant a fair trial. During closing argument, the prosecutor stated, "The fact Mr. Ditore told you that Malcolm Turner was [not] charged with the murder or anything until April 18th I think has significance. *** I think it showed we don't just charge people lightly with crimes. We have to get in the case of a homicide a cause of death from the medical examiner's office. And we are not going to charge people with crimes, like the crime of murder, until we have that evidence. *** I submit to you, ladies and gentlemen, that had the results of the autopsy or post-mortem examination was [sic] different we wouldn't be here today."

■■■ A prosecutor's statements implying that charges would not have been placed against the defendant unless the prosecutor thought he was guilty are improper and prejudicial error. (*People v. Fuerback* (1966), 66 Ill. App. 2d 452, 456, 214 N.E.2d 330.) In light of the fact that it was highly prejudicial for Ditore to testify regarding the plac-

ing of charges against the defendant after discussing the case with police, witnesses, the defendant, and the medical examiner, the prejudice to the defendant was further compounded by the prosecutor's reference to this testimony in closing argument. We are of the opinion that the outcome may have been otherwise had the State omitted these remarks and their inclusion constituted reversible error.

For the foregoing reasons the judgment of conviction is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and SULLIVAN, JJ., concur.