THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN HARTFIELD, Defendant-Appellant.

First District (2nd Division) No. 84—2253

Opinion filed October 15, 1985.

680

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Mary Ellen Dienes and Lynn M. Egan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant appeals from a conviction of rape and the imposition of a sentence of life imprisonment under the habitual criminal statute. He cites four objections on appeal: (1) the trial court erred in denying a motion *in limine* in which defendant sought to exclude evidence of his two prior rape convictions; (2) he was unfairly prejudiced by the State's closing argument; (3) the trial court erred in giving an instruction on the purpose of opening statements; (4) the habitual criminal act violates the eighth and fourteenth amendments of the United States Constitution.

John Hartfield was tried before a jury on charges of rape and aggravated battery. These charges arose from an attack upon complainant, which occurred on the afternoon of February 14, 1983. At trial, complainant testified that she initially encountered the defendant shortly before the attack outside of her apartment building. She was previously unacquainted with defendant when he approached her and a friend to ask for directions. A few minutes later, complainant left her friend and went up to her second-floor apartment.

It was complainant's testimony that while she fumbled with the lock on her apartment door, she noticed the defendant standing nearby. She said that the defendant grabbed her arm, pushed her into

her apartment, and beat and raped her. According to complainant, after the defendant had raped her, he threatened to kill her if she reported the incident.

Complainant testified further that after the defendant left her apartment, she opened her door and looked out into the hallway. She saw her neighbor, Janette Turner, who asked complainant what was wrong. Complainant testified that she told Ms. Turner that nothing was wrong and that she would prefer to be left alone.

Janette Turner's testimony differed somewhat from the complainant's. Ms. Turner said that she heard screams coming from complainant's apartment and that when she went to investigate, she saw the defendant running from out of complainant's doorway. Upon entering the complainant's apartment, Ms. Turner found complainant bleeding and disheveled. Ms. Turner recalled that complainant said that she had been raped.

Richard Bannister testified for the State that he heard screams coming from the complainant's apartment as he sat in his own apartment, one floor above complainant's. According to Mr. Bannister, as he was attempting to investigate, he encountered the defendant running down the stairs of the apartment building toward the basement. Mr. Bannister apprehended the defendant and brought him back upstairs to complainant for identification.

When complainant was presented with the captive defendant, she said initially that he had not hurt her. However, Janette Turner testified that after she had calmed and consoled complainant, the complainant admitted that the defendant had raped her. Shortly after he was apprehended by Mr. Bannister, the police took the defendant into custody.

The defendant was charged with rape and aggravated battery. At trial, the testimony of witnesses complainant, Turner, and Bannister was supplemented by testimony from the physician who treated complainant at Mercy Hospital following the attack. Dr. Seacutt testified that complainant suffered head and vaginal injuries, although he found no semen on her body. A microanalyst testified for the State that she found traces of both complainant's and defendant's blood types on swatches of material taken from complainant's bedsheets and defendant's coat. Defendant did not testify at trial, and he presented no witnesses.

Defendant was convicted of rape and aggravated battery, the battery charge merging into the rape conviction. The trial court held a sentencing hearing at which the State urged the court to sentence defendant to natural life in prison. The State adduced testimony of

two Chicago police officers and an assistant State's Attorney that they were present in court when defendant was convicted of rape in 1974 and again in 1979. In addition, the State produced certified copies of these convictions and of defendant's prison record. Defendant objected to the introduction of these documents since the party named in the prior judgments was Richard, not John, Hartfield. In fact, defendant acknowledged in his late notice of appeal that he is also known as Richard Hartfield.

The trial court held that since the defendant had been convicted three times of a Class X felony within the previous 20 years, he should be sentenced to natural life in prison under the habitual criminal statute. (Ill. Rev. Stat. 1983, ch. 38, 33B—1(e).) Defendant now appeals from his conviction and sentence.

■ The first objection raised by defendant is that the trial court erred in denying a motion *in limine* in which he sought to exclude evidence of his two prior rape convictions. Defendant claims that the court failed to balance the probative value of this evidence against its potential for unfair prejudice.

In order to preserve this objection for appeal, defendant should have included it in his post-trial motion. (*People v. Senor* (1983), 118 Ill. App. 3d 694, 696, 455 N.E.2d 262, 263.) Defendant filed a post-trial motion, but it is not known whether he included an objection to the denial of his motion *in limine*, because he failed to supply a copy of his post-trial motion for the record on appeal. The responsibility for properly preserving the proceedings below rests with the appellant, and any doubts raised by an incomplete record are resolved against him. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 789, 469 N.E.2d 368, 372.) It may be assumed, therefore, that the defendant failed to raise his objection in his post-trial motion.

■ Additionally, the defendant has waived his objection because he failed to testify at trial. The United States Supreme Court held recently that the denial of a motion *in limine* that seeks to exclude defendant's prior convictions is not reviewable if the defendant does not testify at trial. (*Luce v. United States* (1984), 469 U.S. 38, 42-43, 83 L. Ed. 2d 443, 448, 105 S. Ct. 460, 464.) Such a ruling is nonappealable because prejudice to a defendant caused by the trial court's action is wholly speculative. If the prior convictions were never used to impeach the defendant, the degree to which his case was harmed is impossible to measure. 469 U.S. 38, 41-42, 83 L. Ed. 2d 443, 447-48, 105 S. Ct. 460, 463.

Even if defendant's objection were reviewable, his argument is unpersuasive. He contends that the trial judge denied his motion *in*

*limine* as part of a blanket policy, whereby the judge routinely allows the State to use prior convictions for impeachment purposes, regardless of their probative value or propensity to prejudice a defendant. Defendant argues that such a policy is contrary to *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

■ Under *Montgomery*, a defendant's prior conviction may be admitted to impeach his testimony if (1) the prior offense was punishable by imprisonment for more than one year or it involved dishonesty and (2) either conviction or release from prison occurred within the preceding 10 years. However, the trial judge must exclude prior convictions otherwise admissible if he determines that the prejudicial effect of this evidence far outweighs its probative relevance. 47 Ill. 2d 510, 516-18, 268 N.E.2d 695.

■ In the present case, the trial court properly exercised its discretion in keeping with the command of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. The trial judge's decision on the admissibility of evidence will not be disturbed absent a clear abuse of discretion. (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 530, 453 N.E.2d 849, 857.) The judge in this case made his decision after a discussion of the *Montgomery* standard. The convictions were for felonies subject to imprisonment for more than one year, and both fell within the *Montgomery* time limit. Moreover, the judge stated explicitly that he was exercising his discretion under *Montgomery*. Given the judge's cognizance of the dictates of *Montgomery*, he did not abuse his discretion in denying defendant's motion *in limine*.

It is true that the trial judge said that it was his practice "historically" to follow the letter of *Montgomery* and to exercise his discretion by allowing the State to publish the fact of a conviction. However, the judge noted further that he understood the "significance of the defense's argument [that the evidence was unfairly prejudicial]." This statement and his repeated reference to *Montgomery* demonstrate that the judge weighed the probative value of this evidence against its propensity to unfairly prejudice defendant.

■ Furthermore, it is not necessary for the record to reveal the trial court's consideration of the factors used to balance probative value versus unfair prejudice. (*People v. Ellison* (1984), 123 Ill. App. 3d 615, 631, 463 N.E.2d 175, 186.) Rather, where the trial judge is apprised of the dictates of *Montgomery*, it may be assumed that he gave appropriate consideration to all relevant factors. (*People v. Bassett* (1980), 84 Ill. App. 3d 133, 137, 404 N.E.2d 1125, 1128.) Therefore, the fact that the judge in this case did not elucidate upon his decision does not mean that he failed to exercise his discretion. In fact,

the same trial judge's ruling on a motion *in limine* similar to defendant's was recently upheld against an attack identical to the one defendant makes in this case. (*People v. Purnell* (1984), 129 Ill. App. 3d 253, 259, 472 N.E.2d 183, 188.) In *Purnell*, the same judge announced a rationale for denying defendant's motion similar to his rationale here, and the *Purnell* court found that the judge had properly exercised his discretion. 129 Ill. App. 3d 253, 260, 472 N.E.2d 183, 189.

■ Defendant also contends that he was prejudiced by the trial court's denial of his motion *in limine* because it prevented him from testifying in his own defense. This objection lacks merit, however. A defendant's decision to testify seldom turns upon a single factor, and a reviewing court can not assume that an adverse ruling was the impetus for defendant's silence. (*Luce v. United States* (1984), 469 U.S. 38, 42, 83 L. Ed. 2d 443, 448, 105 S. Ct. 460, 464.) The fact that a defendant decides not to risk the possibility of prejudicial impeachment does not mean that the court's ruling was erroneous; ultimately, the decision not to testify is one of trial strategy influenced by a number of considerations. *People v. Johnson* (1982), 104 Ill. App. 3d 572, 577, 432 N.E.2d 1232, 1238.

Defendant's second objection is that he was prejudiced by what he alleges was an improper closing argument by the State. At the outset of his rebuttal, the prosecutor noted the occupations of several jurors. He said: "You are a janitor. You are a sales rep. You are a financial management specialist *** one of you work [*sic*] for a trade association." The prosecutor then went on to point out that the jurors came from different backgrounds but that they shared a common experience of serving on a jury. Defendant contends that the State should not have referred to the occupations of individual jurors.

The defendant also objects to the fact that the prosecutor suggested that the jurors would discuss the case with family and friends after the trial was over. The prosecutor said: "And when you go to your homes tonight, when you speak to your spouses *** they will ask you, what was the case about and what did you decide?" The prosecutor continued to refer to questions that might be posed by the jurors' acquaintances, and each time he suggested such a query, he recalled for the jury some evidence produced at trial. Defendant contends that the State thus implied that the jury should base its decision not on evidence or its own deliberations, but on the reactions of friends and family.

■ Defendant failed to object to these alleged improprieties at trial, and it may be assumed that he failed to make this objection in

his post-trial motion because he did not provide a copy of his motion for the record on appeal. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 789, 469 N.E.2d 368, 372.) When a defendant fails to make a timely objection at trial or in a post-trial motion, irregularities in the State's closing argument are deemed waived on appeal. *People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739.

In fact, defendant concedes that he has waived this objection, but he contends that it should be noticed on review under the plain error doctrine. Defendant does not explain why his objection constitutes plain error, however, nor does there appear to be any justification for circumventing the waiver rule in this case.

Under Illinois Supreme Court Rule 615(a), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).) A significant purpose of the plain error doctrine is to correct serious injustices. When the evidence in a case is closely balanced, an appellate court may consider errors that have not been properly preserved for review. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) In addition to protecting a defendant in situations where the evidence is close, the plain error rule also covers irregularities of such magnitude that they deny the accused a fair and impartial trial. 79 Ill. 2d 564, 577, 404 N.E.2d 233.

Defendant's objection fails to meet the criteria necessary for review of plain errors. The evidence against defendant was not closely balanced. To the contrary, the State produced substantial evidence of defendant's guilt. He was seen coming out of complainant's apartment and caught by her neighbor right in the building only minutes after the attack. Complainant testified that defendant beat and raped her, and a medical examination revealed that she suffered head and vaginal trauma. Complainant did make a prior inconsistent statement about whether the defendant had attacked her, but she explained at trial that she was afraid for her life at the time.

Not only was the evidence in this case not close, but the alleged improprieties in the State's argument were not of such magnitude as to deprive defendant of a fair trial. The prosecutor did not attempt to incite passion in the jury, nor did he comment upon facts not in evidence. The relatively innocuous remarks of the State did not prevent defendant from receiving an impartial trial.

Moreover, defendant fails to persuade this court that the State's argument was improper. It is impractical to lay specific guidelines for closing arguments. Rather, each case must be decided on its own facts. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398

N.E.2d 68, 77.) A prosecutor has wide latitude during closing. (*People v. Adams* (1982), 111 Ill. App. 3d 658, 666, 444 N.E.2d 534, 541.) However, he must avoid statements not based upon evidence and refrain from conduct designed solely to inflame the passions of the jury. *People v. Witted* (1979), 79 Ill. App. 3d 156, 165-66, 398 N.E.2d 68, 77.

 The prosecutor's remarks in the present case, when measured against this standard, do not seem improper. Citing the occupations of jurors, while a somewhat personal reference, was not designed to excite passion. It is true that a prosecutor should refrain from making personal comments to individual jurors. (*People v. Weaver* (1972), 7 Ill. App. 3d 1104, 288 N.E.2d 669.) Viewed in context, however, the prosecutor's statements here were used only to illustrate the fact that jurors bring different experiences to their shared duty of deciding a case. The prosecutor also referred to questions that might be posed by the jurors' acquaintances, but these remarks were merely a framework within which to review evidence produced at trial. At no time did the prosecutor suggest that the jury should be swayed by the reactions of others.

 Finally, even if the State's closing argument were deemed improper, the error was harmless. An error in closing is not reversible unless the improper comments result in substantial prejudice to the defendant. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 792, 469 N.E.2d 368, 374.) In deciding whether defendant was prejudiced, it is appropriate to assess the evidence of his guilt and to determine whether the error was a material factor in his conviction. (*People v. Graham* (1985), 132 Ill. App. 3d 673, 684, 477 N.E.2d 1342, 1350.) In this case the State produced ample evidence of defendant's guilt, and the prosecutor's remarks were not a material factor in defendant's conviction.

A third objection raised by defendant is that the trial court erred in giving Illinois Pattern Jury Instruction (IPI), Criminal, No. 1.03 (2d ed. 1981). This instruction provides that "[o]pening statements are made by the attorneys to acquaint [the jury] with the facts they expect to prove." (IPI Criminal 2d No. 1.03.) Defendant proffered an alternate instruction, which provided that an opening statement by defense counsel acquaints the jury with defendant's theory of the case and that the accused does not have to prove anything.

Defendant contends that the instruction given by the court improperly suggested that the accused must prove the contents of his opening remarks. According to defendant, this instruction shifted the burden of proof to him in violation of the due process clause.

▮▮▮ As with defendant's previous objections, it may be assumed that he failed to cite this error in his post-trial motion since he did not provide a copy of his motion for the record. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 789, 469 N.E.2d 368, 372.) Under Illinois Supreme Court Rule 451(c), an appellate court can review substantial defects in jury instructions, although the issue was not properly preserved. (87 Ill. 2d R. 451(c).) However, this exception is confined to the correction of grave errors or to instances where evidence is so factually close that the jury must be instructed with exactitude. *People v. Berry* (1984), 99 Ill. 2d 499, 505, 460 N.E.2d 742.

In this case, the court's instruction can not be considered grave error, and as already noted, the evidence produced at trial was not factually close. Therefore, it is doubtful that defendant's objection is reviewable as plain error. Assuming, however, that this objection is reviewable, defendant fails to establish that the jury instruction shifted the burden of proof to him or that this allegedly improper instruction constitutes reversible error.

▮▮▮ To assess the propriety of a particular jury instruction, it must be viewed in conjunction with all of the instructions given. It is sufficient if the series of instruction, taken as a whole, fully and fairly announce the applicable law. (*People v. Terry* (1984), 99 Ill. 2d 508, 516, 460 N.E.2d 746.) The instruction in this case did not require the defendant to prove any element of the offense charged, and when it is viewed with the series of instructions given, the jury was still adequately informed of the burden of proof and presumption of innocence.

Along with its instruction on opening statements, the trial court gave IPI Criminal 2d No. 2.03, which emphatically announces that the State has the burden of proof and that the defendant need not prove anything because he is presumed innocent. In fact, the instructions given in this case are preferred over others. Supreme Court Rule 451(a) provides that pattern jury instructions shall be given unless the court determines that they do not accurately state the law (87 Ill. 2d R. 451(a)), and unnecessary inclusion of a nonpattern instruction in a criminal case is not favored. *People v. Vanda* (1982), 111 Ill. App. 3d 551, 568-69, 444 N.E.2d 609, 622, *cert. denied* (1983), 464 U.S. 841, 78 L. Ed. 2d 130, 104 S. Ct. 136.

▮▮▮ Assuming, however, that the trial court erred in instructing the jury, this error is not one that demands reversal. A court's erroneous refusal to give defendant's instruction is not reversible error unless justice was thereby denied or the verdict resulted from the court's rejection of a proffered instruction. (*People v. Vanda* (1982),

111 Ill. App. 3d 551, 569, 444 N.E.2d 609, 623.) In this case, justice was not denied since the jury was adequately instructed on the burden of proof. Furthermore, given the substantial nature of the evidence against defendant, it can not be said the verdict resulted from the court's refusal to give defendant's instruction. Even if the alleged error were of constitutional magnitude as defendant suggests, it is still not reversible if it is harmless beyond a reasonable doubt. (111 Ill. App. 3d 551, 571, 444 N.E.2d 609, 624.) The error alleged here, when viewed in context, is harmless beyond a reasonable doubt.

■■ Defendant's final objection on appeal is that the habitual criminal statute (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1), under which he was sentenced, violates the eighth and fourteenth amendments to the United States Constitution. At his sentencing hearing, defendant did not raise this objection, and it may be assumed, as with defendant's previous objections, that he failed to cite this alleged error in his post-trial motion.

Even constitutional errors not raised before the trial court are generally waived on appeal. (*People v. Visnack* (1985), 135 Ill. App. 3d 113, 118, 481 N.E.2d 744, 747.) However, since this alleged error affects defendant's substantial rights, this court will review his objection under the plain error doctrine. 87 Ill. 2d R. 615(a).

■■ The habitual criminal statute provides that every person who is three times convicted of a Class X felony or murder within a 20-year period shall be sentenced to life imprisonment. (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1.) Defendant contends that this statutory penalty constitutes cruel and unusual punishment. This is so, defendant argues, because the act mandates a sentence without regard to a defendant's individual circumstances, and it establishes a conclusive presumption that defendant can not be rehabilitated.

Defendant's argument is unpersuasive. To support his assertion that the act is unconstitutional, defendant cites cases construing death penalty statutes. (*Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954; *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978.) It is true that the constitution requires a consideration of mitigating circumstances when a defendant is sentenced to death, but this requirement is based upon the fact that the death penalty is "profoundly different" from all other forms of punishment. (*Lockett v. Ohio* (1978), 438 U.S. 586, 605, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2965.) Because the death penalty is different from any imprisonment "no matter how long," cases construing death penalty statutes are of little assistance in determining the constitutionality of habitual offender statutes. *Rummel v. Estelle* (1980), 445

U.S. 263, 272, 63 L. Ed. 2d 382, 390, 100 S. Ct. 1133, 1138.

Defendant also cites *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001, to support the proposition that his sentence of life imprisonment was disproportionately harsh. In *Solem*, the court held that a sentence of life imprisonment under a recidivist statute was disproportionate to the defendant's crimes because he had been convicted for a series of relatively minor, nonviolent offenses. (463 U.S. 277, 296-97, 77 L. Ed. 2d 637, 653, 103 S. Ct. 3001, 3012-13.) The present case is distinguishable from *Solem*, however, because here the defendant was convicted three times of violent and serious felonies. In fact, the trial judge noted that the defendant not only raped, but beat his victims; therefore, the judge felt he owed it to the women of the community to remove the defendant from society. In these circumstances, defendant's sentence is not unconstitutionally disproportionate to the crimes committed.

The habitual criminal statute has been upheld repeatedly against constitutional attacks similar to defendant's. (*People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Washington* (1984), 125 Ill. App. 3d 109, 465 N.E.2d 666; *People v. Tobias* (1984), 125 Ill. App. 3d 234, 465 N.E.2d 608; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323.) In *Withers*, the court declared that the act did not violate the eighth and fourteenth amendments despite the fact that individual circumstances do not affect the habitual offender's sentence. This is so because two previous adjudications have afforded the defendant an opportunity to present mitigating factors to a court. 115 Ill. App. 3d 1077, 1090, 450 N.E.2d 1323, 1332.

Finally, defendant contends that the habitual criminal statute sets up an unconstitutional, conclusive presumption. Again, however, defendant's argument is unpersuasive. He cites cases construing the constitutionality of evidentiary presumptions used at trial to prove a defendant guilty. (*County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160.) When a fact finder is compelled to rely on a presumption, the inferred fact must flow beyond a reasonable doubt from the established fact, but this principle has its origin in the due process requirement that the State must prove every element of an offense beyond a reasonable doubt. (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) The statute complained of here simply mandates a prison term, imposed only after the State has proved a defendant guilty of his third serious offense. Therefore, constitutional requirements for evidentiary presumptions are inapplicable.

Implicit in this statute is a legislative determination that a three-time offender should be removed from society since he is impervious to the rehabilitative efforts of the State. The legislators are entitled to make such a judgment, because it is within their power to define offenses and prescribe the penalties necessary to protect the community. (*People v. Taylor* (1984), 102 Ill. 2d 201, 206, 464 N.E.2d 1059.) Legislative decisions in this regard are presumed valid (102 Ill. 2d 201, 206, 465 N.E.2d 1059), and the defendant has failed to counter this presumption.

In view of the foregoing, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.